UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Jonah West, individually, and on
behalf of all others similarly situated,

Plaintiffs,

vs.                                               REPORT AND RECOMMENDATION

Border Foods, Inc., d/b/a Pizza Hut,
Inc., and Sky Ventures, LLC,

Defendants.            Civ. No. 05-2525 (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Plaintiffs' Motion for Conditional Certification,

Judicial Notice, and to Compel, and the Defendant's Informal Motion to Stay

Consideration of the Plaintiffs' Motion for Conditional Certification, Judicial Notice,

and to Compel.  A Hearing on the Motions was conducted on April 18, 2006, at which

time, the Plaintiffs appeared by Donald H. Nichols, and Michelle R. Fisher, Esqs., and

the Defendants appeared by David P. Pearson, Julie M. Engbloom, and William A. McNab, Esqs.

For reasons which follow, we recommend that the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel be denied, and that the Defendants' informal Motion to Stay consideration of the Motion be denied, as moot. We also recommend that the Defendants' Motion to Strike be denied, as moot.[1]

## II.  Factual Background

The Plaintiff Jonah West ("West") commenced this action on behalf of himself, and others similarly situated, alleging that the Defendants violated the Fair Labor Standard Act ("FLSA"), Title 29 U.S.C. §§201-219, when they failed to pay him for his overtime hours.  Specifically, West, who is a former shift manager at the Pizza Hut restaurants in Maplewood, and in Woodbury, Minnesota, alleges that he and other similarly situated employees worked as shift managers at the Pizza Hut restaurants

---

[1]While the Plaintiffs' Motion was under advisement, the Defendants filed a Motion to Strike certain averments that were made in the Plaintiffs' Interrogatory Answers which were submitted in support of the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel.  The Plaintiffs have not, as of yet, responded to the Defendants' Motion to Strike, and no Hearing was conducted on that Motion.  Nevertheless, our recommended disposition of the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel, would appear to render the Defendants' Motion moot, and accordingly, we recommend that the Motion be denied.

that were owned and operated by the Defendants, and that he, and other similarly situated employees, worked in excess of forty (40) hours per week, without receiving full overtime compensation. <u>Amended Complaint</u>, at ¶¶6 and 7.

At the time that the Plaintiffs' Motion was filed, ten (10) persons, in addition to West, had "opted-in" to the suit. <u>Affidavit of Michele Fisher ("Fisher Aff.")</u>, at ¶3. Of those persons, six (6) were determined by the Plaintiffs not be similarly situated, and either have withdrawn from the case, or have been asked to do so by the Plaintiffs. <u>Id.</u>  The remaining five (5) Plaintiffs include: West; Erin Allram ("Allram"), who worked as a shift manager at the Defendants' Pizza Hut restaurant in Cottage Grove, Minnesota; Marshaire Cross ("Cross"), who worked at the Defendants' Pizza Hut restaurants in Apple Valley, Minnesota, and in St. Paul, Minnesota; Joseph Starks ("Starks"), who worked as a shift manager in the Defendants' Pizza Hut restaurant in New Brighton, Minnesota; and Stacy Dondelinger ("Dondelinger"), who worked as a shift manager in the Defendants' Pizza Hut restaurant in Columbia Heights, Minnesota.[2]

---

[2]Since the Plaintiffs' Motion was filed, two (2) other persons -- Nakia Johnson, and Mike Sittler -- have filed Notices of Consent, in which they expressed their willingness to join as Plaintiffs to the action.  See, <u>Docket No. 37</u>.  However, no information has been provided with respect to those persons, such as which
(continued...)

By their Motion, the Plaintiffs now seek conditional certification to proceed collectively, pursuant to Title 29 U.S.C. §216(b).  The Plaintiffs also seek to provide judicial notice of the action to all of the shift managers who have not joined in the action, and who are employed by the Defendants at their Pizza Hut, and "combo" restaurants.[3]  In order to effectuate the notice, the Plaintiffs have also requested that the Defendants be compelled to answer Request No. 1, of their First Set of Requests for the Production of Documents, which requests the following information:

> A list, in electronic and importable format, of all persons employed by Defendants as shift managers at any of Defendants' Pizza Hut locations from September of 2002 to present, including their name, address, telephone number, dates of employment as a shift manager, location of employment, employee number, and social security number.

---

[2](...continued)
restaurants they worked at, or the precise nature of their claims against the Defendants.

[3]The Plaintiffs' request to include, within the putative class, shift managers at "combo" restaurants is apparently a reference to restaurants which contain a Pizza Hut facility, in addition to another facility, such as a Taco Bell restaurant.  Notably, the deposition testimony of Fred Burmer, who is the Vice President of Operations for the Defendant Sky Ventures, LLC ("Sky Ventures"), reflects that Sky Ventures owns and operates one facility that contains both a Taco Bell, and a Pizza Hut restaurant, and that the employees of Taco Bell, at that location, are -- like each of the Plaintiffs -- paid by Sky Ventures.  Fisher Aff., Exh. 15, at pp. 30-31.

Given this factual backdrop, we proceed to the parties' Motions.

### III.  Discussion

"The FLSA allows employees to bring a collective action 'for and in behalf of * * * themselves and other employees similarly situated.'" <u>Frank v. Gold'n Plump Poultry, Inc.</u>, 2005 WL 2240336 at *2 (D. Minn., September 14, 2005), quoting <u>Title 29 U.S.C. §216(b)</u>.  However, "[u]nlike class actions under Rule 23, '[n]o employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" <u>Smith v. Heartland Automotive Services, Inc.</u>, 404 F. Supp.2d 1144, 1149 (D. Minn. 2005), quoting <u>Title 29 U.S.C. §216(b)</u>.  The process by which putative plaintiffs, in a FLSA collective action, are joined, is commonly referred to as the "opt-in" process, and Courts may facilitate that process by authorizing the named Plaintiffs in a FLSA action to transmit a notice to potential class members.  <u>Hoffman-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989).   However, "[t]hat power is to be exercised * * * only in 'appropriate cases,' and remains within the discretion of the district court." <u>Severtson v. Phillips Beverage Co.</u>, 137 F.R.D. 264, 266 (D. Minn. 1991)("Severtson I").

"The fundamental inquiry in determining whether a collective action under [Section] 216(b) is appropriate is whether or not the plaintiffs are 'similarly situated.'" Smith v. Heartland Automotive Services, Inc., 404 F. Supp.2d 1144, 1149-50 (D. Minn. 2005).  "Unfortunately, [Section] 216(b) does not define the term 'similarly situated,' and there is little circuit law on the subject."  Theissen v. General Electric Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001).  In this District, like many other jurisdictions, the determination of whether plaintiffs are "similarly situated," is made by using a two-step process, which has recently been described as follows:

> At the initial stage, the court determines whether the class should be conditionally certified for notification and discovery purposes.  [Kalish v. High Tech Institute, Inc., 2005 WL 1073645 at *1 (D. Minn., April 22,2005)].  At this conditional certification stage, the plaintiffs need only come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan. See, id. at *2; Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991)(Severtson I).  That is, the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations.  Severtson I,137 F.R.D. at 267; Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 278-79 (D. Minn. 1992 (Severtson II).  At the second stage -- which comes after discovery is completed -- the court uses a stricter standard for determining whether the putative class members are similarly situated and reconsiders whether the trial should proceed collectively or if it should be severed.

> Kalish, 2005 WL 1073645 at *1.  At the second stage, the
> court conducts a fact intensive inquiry of several factors,
> including: (1) the extent and consequence of disparate
> factual and employment settings of the individual plaintiffs;
> (2) the various defenses available to defendant which
> appear to be individual to each plaintiff; and (3) fairness
> and procedural considerations.  See, Theissen, 267 F.3d at
> 1102-03.

Frank v. Gold'n Plump Poultry, Inc., supra at *2; see, Smith v. Heartland Automotive
Services, Inc., supra at 1149-50; Kalish v. High Tech Institute, Inc., 2005 WL
1073645 at *2-3 (D. Minn., April 22, 2005); see also Theissen v. General Electric
Capital Corp., supra at 1102-03; Koren v. SUPERVALU, Inc., 2003 WL 1572002 at
*15-16 (D. Minn., May 14, 2003).

Here, the parties have engaged in some discovery, such as the exchange of

Interrogatories and Document Requests, and have taken the depositions of Barry

Zelickson, Frank Burmer, and Julie Pung ("Pung"), who are each officers of the

Defendant Sky Ventures, LLC ("Sky Ventures"), pursuant to Rule 30(b)(6), Federal

Rules of Civil Procedure.  However, the discovery process has not been completed

and, as such, we analyze the Plaintiff's Motion under the initial stage of review.

At this stage, the Plaintiffs need only show that there is a "colorable basis" for

their collective action, see, Smith v. Heartland Automotive Services, Inc., supra at

1149, and that factual similarities or differences among the putative Plaintiffs are such

that the case may be properly managed as a collective action.  See,  Ray v. Motel 6

Operating Limited Partnership, 1996 WL 938231 at *4 (D. Minn., March 18, 1996);

see also, <u>Severtson v. Phillips Beverage Co.</u>, supra at 266 ("As a matter of sound case management, a court should, before [authorizing a notice], make a preliminary inquiry as to whether a manageable class exists."); see, e.g., <u>Diaz v. Electronics Boutique of America</u>, 2005 WL 2654270 at *5 (W.D. N.Y., October 17, 2005); <u>England v. New Century Financial Corp.</u>, 370 F. Supp.2d 504, 509 (M.D. La. 2005).

"A colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim." <u>Severtson v. Phillips Beverage Co.</u>, 141 F.R.D. 276, 278-79 (D. Minn. 1992)("Severtson II"). This analysis "does not require th[e] court to make any findings of fact with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented." <u>Id.</u>   However, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." <u>Barron v. Henry County School System</u>, 242 F. Supp.2d 1096, 1103 (M.D. Ala. 2003), citing <u>Sheffield v. Orius Corp.</u>, 211 F.R.D. 411, 416 (D. Or. 2002).

The Plaintiffs urge that conditional certification is proper because West, and each of the other "opt-in" Plaintiffs, are or were shift managers at Pizza Hut restaurants that were owned and operated by the Defendants; that each was classified

as a "non-exempt employee" for the purposes of overtime eligibility; that each used the same computer system to track their time; that each was subject to the same corporate hierarchy; and that, pursuant to the practice of the Defendants, each was deprived of overtime pay.

As factual support for their Motion, the Plaintiffs have presented the Interrogatory Answers of West, Starks, Dondelinger, Allram, and Cross. See, Fisher Aff., at Exh. 17. As is pertinent to the present Motion, each of those persons was asked to "[d]escribe in detail all facts supporting, refuting or concerning your complaint that Defendants failed to pay you overtime compensation for all hours worked in excess of forty (40) hours per week," and to describe his or her responsibilities for recording work hours in the Defendants' Automated Timekeeping system. Id.

In response to the Interrogatory concerning the factual basis for his claim, West avers, as follows:

> Defendant maintained a practice of requiring its hourly employees to work hours "off the clock." For example, Plaintiff's district managers, Jerry Wickery and Doug Pricket, told Plaintiff's manager Glenn Rowley that hours worked over forty hours per week were to be "off the clock." Mr. Rowley then conveyed that information to Plaintiff. Sometimes Mr. Rowley allowed a few hours of

> overtime pay to be recorded and paid.  Plaintiff is also aware that this practice was occurring at other locations, including but not limited to the Maplewood, Cottage Grove, Stillwater, and Woodbury restaurants.

Id.

West further elaborates that he was responsible for clocking in and out daily; that he was instructed by Glenn Rowley, who was his manager, to delete hours for certain employees, who had worked in excess of forty (40) hours per week; and that he had worked approximately three (3) hours of overtime per week.  In response to a Second Set of Interrogatories, West explained that his awareness of similar conduct at other stores was predicated on his knowledge that Jerry Wickery ("Wickery") was a district manager for several of the Defendants' restaurants, and West's experiences working at restaurants that had been managed by Wickery.  Additionally, West reports that a shift manager at the Defendants' restaurant in Stillwater, Minnesota, who he identified as Corinna, had informed him that she had been required to work off the clock without overtime compensation.  Id.

Similarly, Starks describes the factual basis for his claim, as follows:

> Plaintiff worked on average 50 hours per week.  Plaintiff was not fully compensated for his overtime hours worked because his restaurant managers, Ronda Gordmaker and Tony Martin, required him to work off the clock in order to keep labor costs as low as possible.    At weekly

-10-

> performance meetings, his managers regularly stressed that
> they need to keep labor costs down.  This resulted in shift
> managers being forced to work longer hours.  Plaintiffs
> managers at times, told him to clock out before his shift
> was over and then paid him cash for staying the extra hours.
> In addition, Plaintiff's managers modified his hours worked
> in the timekeeping system.  Finally, sometimes Plaintiff's
> managers clocked him into the timekeeping system but did
> not do so immediately upon him beginning his shift.

Id.

Starks further avers that he was required to enter his time into the Automated

Timekeeping System, and that, on occasion, he modified his time in the system.  Id.

Dondelinger's Interrogatory Answers contain the following description of the

factual basis for her claim:

> Plaintiff worked on average 42 hours per week.  Plaintiff
> was not paid accurately for her overtime hours worked
> because the restaurant manager, Jennifer Bauer, recorded
> her hours inaccurately in the computer system.  In addition,
> there were instances where Plaintiff's manager asked her to
> work off the clock and told her she would pay her cash out
> of the cash register if she worked a few extra overtime
> hours.  She worked this overtime once or twice a month.
> Plaintiff believes that it was either the regional or district
> manager directing her boss to make her work overtime
> hours.

Id.

Additionally, Dondelinger avers that she was required to enter her time into the

Automated Timekeeping System; that she modified her time on several occasions with

-11-

her manager's approval; and that she was allowed to modify her time when she forgot to punch in or out at the beginning or end of a shift.  <u>Id.</u>

According to Allram's Interrogatory Answers, the factual basis for her claim can be described, as follows:

> Plaintiff worked on average 47 hours per week.  Plaintiff was required by her manager to work off the clock a few times per month.  It was Plaintiff's understanding that Pizza Hut only allowed her manager to pay the hourly employees for a specified number of hours per month.  If Plaintiff or the other hourly employees' overtime hours exceeded the hours allocated to the manager, he would inform them that he would not pay them for those hours and required that they work off the clock.  Plaintiff is not aware if anyone altered her records to further deny her pay for hours worked.

<u>Id.</u>

Allram further attests that she was required to enter her time in the Automated Timekeeping System, and that she did not make any modifications to the work hours that were entered into the system.  <u>Id.</u>

Cross answered the Defendants' Interrogatory concerning the factual basis for her FLSA claim, as follows:

> Plaintiff worked on average 52 hours per week.  As a matter of corporate policy, Plaintiff's managers were required to meet a quota every month.  Therefore, they were required to reduce the number of overtime hours

> because her managers, Bruce and Neil, modified her time
> records in the timekeeping system.  She is not sure how
> often this occurred, but once the Plaintiff realized it was
> occurring (her co-workers, Jamie and Sabrina Baucou, were
> complaining about it happening to them also), she noticed
> that for approximately a three month period her hours listed
> on her pay statements were less than the total hours
> worked.

Id.

Cross further attested that she was allowed to modify her time records in the

Automated Timekeeping System if she forgot to punch in or out at the beginning or

end of a shift.  Id.

In addition to those Interrogatory Answers, the Plaintiffs submitted an

anonymous letter, which was addressed to Pung, who is the Senior Human Resources

Generalist for the Defendants, in which the author describes instances in which a

number of the Defendants' employees at the Defendants' Hillcrest Pizza Hut

restaurant in Maplewood, Minnesota, including West, were either required to work

off-the-clock, or were denied overtime pay.  Id. at Exh. 18.  The Plaintiffs have also

directed our attention to the deposition testimony of Pung, which reflects that an

employee of the Defendants, at a Pizza Hut restaurant in either Brainerd or Baxter,

Minnesota, had complained that a manager had adjusted his end times for when he

finished his shifts.  See, Id. Exh. 16, at p. 34.

-13-

The Defendants have challenged the admissibility of several of averments that have been presented by the Plaintiffs in support of their Motion.  There is presently a split in the pertinent authority as to whether the Court may properly consider inadmissible hearsay in the context of a Motion for Conditional Certification. Compare, Harrison v. McDonald's Corp., 411 F. Supp.2d 862, 865-66 (S.D. Ohio 2005)("[O]nly admissible evidence may be considered in connection with a [Section] 216(b) motion."), citing Richards v. Computer Sciences Corp., 2004 WL 2211691 at *1 (D. Conn., September 28, 2004), and McElmurry v. US Bank National Association, 2004 WL 1675925 at *10 (D. Or., July 27, 2004); Clark v. Dollar General Corp., 2001 WL 878887 at *2 (M.D. Tenn., May 23, 2001), with White v. MPW Industrial Services, Inc., --- F.R.D. ----, 2006 WL 752554 at *4-5 (W.D. Tenn., March 21, 2006)(finding that hearsay evidence may properly be considered in the context of a Motion for Conditional Certification).  The parties do not address this split in authority, and our independent research does not disclose any case law from this District, or from any Circuit Court of Appeals, which has addressed the propriety of considering hearsay evidence in the context of a Motion for Conditional Certification.

The resolution of this split in authority is not material to our Recommendation and, as such, we will assume, without deciding, that hearsay evidence may be

considered in the context of a Motion for Conditional Certification.  That being said,

even under the more permissive line of authority, the averments made in support of

a Motion for Conditional Certification must be based on personal knowledge, see,

White v. MPW Industrial Services, Inc., supra at *5, and "unsupported assertions of

widespread violations are not sufficient to meet the Plaintiff's burden." See, Freeman

v. Wal-Mart Stores, Inc., 256 F. Supp.2d 941 (W.D. Ark. 2003), citing Haynes v.

Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983); H&R Block , Ltd. v. Housden,

186 F.R.D. 399, 400 (E.D. Tex. 1999).

Eliminating those averments which are not based on personal knowledge, as

well as those which are merely conclusory, the Plaintiffs' submissions establish that

six (6) shift managers, who were employed by the same corporate entity, and who

operated under the same timekeeping system, were required to work off-the-clock by

their individual store managers.[4]   Sky Ventures purportedly owns approximately

eighty (80) Pizza Hut restaurants, and it employs approximately three (3) shift

_____

[4]Of course, if we were to accede to the view that "only admissible evidence may
be considered in connection with a [Section] 216(b) motion," see, Harrison v.
McDonald's Corp., 411 F. Supp.2d 862, 865-66 (S.D. Ohio 2005), we would
necessarily disregard West's averments that a shift manager at the Defendants'
restaurant in Stillwater, Minnesota, who he identified as Corrina, told him that she had
been required to work off-the-clock, as such an averment is plainly hearsay.

managers, and one (1) restaurant general manager, at each location.  Affidavit of Julie Pung ("Pung Aff."), at ¶2-3.  As such, the Plaintiffs' showing demonstrates that six (6) of the potential class of approximately 240 shift managers, who are employed at Pizza Hut restaurants owned by the Defendants -- 2.5 per cent of the potential class -- were allegedly required by their store managers to work off-the-clock.  Such a limited sampling of employees does not support the Plaintiffs' assertion of widespread violations resulting from a common policy or plan.  See, e.g., Harrison v. McDonald's Corp., supra at 870-71(averments from two (2) employees who claimed FLSA violations, out of a potential class of 300, were insufficient to allow for conditional certification); Flores v. Lifeway Foods, Inc., 289 F. Supp.2d 1042, 1046 (N. D. Ill. 2003)(evidence that demonstrated an employer's payment practices with respect to two (2) employees out of fifty (50) did not amount to "even a 'modest factual showing' of a common policy or plan.").

The Defendants have also presented evidence which refutes the Plaintiffs' assertion that a centralized policy required shift managers to work off the clock. Specifically, the Defendants have submitted training materials which require employees to clock themselves in before they start work, and to clock themselves out when their shift is over.  Pung Aff., Exh. B, at SV000349.  The Defendants have also

-16-

submitted their Basic Management Training Program for Pizza Hut restaurants, which contains a memorandum entitled "Policy Bulletin 501." Id. at Exh. A.  According to that policy, managers employed at the Defendants' Pizza Hut restaurants are prohibited from punishing an employee by cutting hours that were actually worked, or by asking, letting, or making employees work after they clock out.  Similarly, the manager on duty is also prohibited from improving shift labor by directing anyone not to clock in for a scheduled shift; by refusing to pay overtime that an employee earned; by moving overtime from one week to the next; by asking or requiring anyone to work off the clock; or by reducing actual hours worked in the company records.  Id. Exh. B., at SV000349-50.  The Defendants further note that their Management Operations Manual requires that hourly employees be paid time and a half for overtime.  Id. at Exh. C.

Since this case is at the initial stage of the certification inquiry, we need not make any factual determinations.  However, neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper.  See, Basco v. Wal-Mart Stores, Inc., 2004 WL 1497709 at *5 (E.D. La., July 2, 2004)("To create a collective action class, including the cost associated with that when a Court

is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved."); see, e.g., Ray v. Motel 6 Operating Limited Partnership, supra at *4. The plaintiffs, in Ray, who were assistant managers at the defendant's motels, sought to proceed collectively in their claim that the defendant had denied them overtime payments in violation of the FLSA. Specifically, the plaintiffs alleged that the defendants told assistant managers that the job would require overtime, but that they could not record more than forty (40) hours per week. In support of their requested certification, the plaintiffs submitted a number of affidavits concerning the defendant's alleged "plan" to deny them overtime payments.

In addressing the propriety of the conditional certification and notice, the Court recognized that the "[d]etermination of class status at the notice stage is often liberally authorized since the court has minimal evidence for analyzing the class." Id. However, the Court determined that, given the extensive facts before it, there was no need for discovery in order to determine whether certification was proper, and it ultimately found that the plaintiffs had failed to satisfy their burden that they were similarly situated for the purposes of the FLSA. In so finding, the Court recognized that each of the plaintiffs who had "opted in" to the action were employed in the same

position, pursuant to a similar management plan, as members of a management team which consisted of a manager and an assistant manager; that each of the plaintiffs were employed by the same corporate entity; and that the plaintiffs each alleged a common illegal plan to deprive them of overtime pay.

However, the Court also noted the individualized nature of the plaintiffs' claims, as the plaintiffs worked at a minimum of thirty-nine (39) different properties, located in twenty (20) different States; the properties where the plaintiffs worked varied widely as to the number of rooms and budgets; and the amount of overtime hours varied among plaintiffs. The Court also observed as follows:

> Moreover, the illegal overtime plan alleged by the Plaintiffs in the present action is not necessarily carried out through central management. First official written policy dictates that overtime will be paid in compliance with the FLSA. Second, if an illegal scheme exists at all, it is implemented on a decentralized level. Specifically, the approval of overtime is controlled by area supervisors. Further, in that Plaintiffs also allege that budget plans demonstrate a need for improper overtime, it is notable that the budgetary plans differ according to region and property. The evidence does not indicate that all the Plaintiffs sustained injury from one unlawful policy.

Id. at *4.

Under similar circumstances, Courts from other jurisdictions have determined that where an "off-the-clock" claim requires significant individual considerations, it may

-19-

be inappropriate for conditional certification.  See, <u>Diaz v. Electronics Boutique of America</u>, supra at *5(denying Motion for Conditional Certification upon the finding that the plaintiff's "allegations -- viz., that he worked "off-the-clock" without compensation and that his timesheets were altered to delete overtime hours worked -- are too individualized to warrant collective action treatment."), citing <u>Lawrence v. City of Philadelphia</u>, 2004 WL 945139 at *2 (E.D. Pa., April 29, 2004)(denying Motion for class certification where "off-the-clock" claim did not involve regularly scheduled hours that were worked by all members of the class, because "[t]he circumstances of those individual claims potentially vary too widely to conclude that * * * the Plaintiffs are similarly situated."); <u>England v. New Century Financial Corp.</u>, supra at 509 (finding conditional certification improper in a case where an "off-the-clock" claim involved a multitude of different managers at different locations, and where liability at one store location would not necessarily require a finding of liability at another location); <u>Basco v. Wal-Mart Stores, Inc.</u>, supra at *7.

In <u>Basco v. Wal-Mart Stores, Inc.</u>, supra at *7, the plaintiffs alleged "wide-spread occurrence of off-the-clock-work and unpaid overtime" at the defendant's stores in Louisiana.  In support for their allegations, the plaintiffs presented testimony from a former store manager that six (6) persons worked off-the-clock at his store, and

that he had previously been instructed to delete overtime hours from employees' time records. The plaintiffs also presented testimony from five (5) of the defendant's employees who claimed that they had worked more than forty (40) hours without receiving overtime compensation. Id. at *6.

In response to the plaintiffs' submissions, the defendants presented evidence that the plaintiffs were, individually, responsible for punching themselves in and out, and that the defendant's official policy required payment for all working time. Id. at *7. As such, the defendants urged that "any deviations for [sic] that policy occurs on a manager-by-manager basis and associate-by-associate basis involving particular circumstances and anecdotal testimony." Id.

When presented with this information, the Court determined that certification was improper, reasoning as follows:

> Simply put, plaintiffs seek to make a corporate policy to keep employee wage costs low sufficient proof to justify the creation of a class of all Wal-Mart employees that have not been properly paid overtime in the last three years. It is obvious from the discovery presented that this "policy" and its effects are neither homogeneous nor lend themselves to collective inquiry. The effects of the policy as alleged are anecdotal, that is to say particularized. Plaintiffs' own witnesses demonstrate that the "policy" was not even uniformly or systematically implemented at any given store. While it is true that this "lesser" standard

-21-

CASE 0:05-cv-02525-DWF-RLE   Document 63   Filed 06/12/06   Page 22 of 26

should not preclude certification, and "similarly situated"
does not mean identically situated, plaintiffs have failed in
their burden of proof to demonstrate identifiable facts or
legal nexus that binds the claims so that hearing the cases
together promotes judicial efficiency.  For this reason the
Court would deny the Motion to Certify Collective Action.

Id. at *7.[5]

The circumstances here are analogous to those which were present in Ray and Basco,

in that the Plaintiffs were employed at different store locations, where different

individual restaurant managers allegedly used varying means to deprive the Plaintiffs

of proper compensation for his or her overtime hours.  Furthermore, the nature of the

asserted violation differ among the Plaintiffs; the number of uncompensated overtime

hours that are being claimed range from two (2) to twelve hours (12) hours weekly,

Fisher Aff. at Exh. 17; and, like both Ray and Basco, the alleged violations are

contrary to the Defendants' official written policy, which precludes store managers

from requiring employees to work off-the-clock, and requires payment of time and

one-half for all overtime hours worked.

---

[5]While the Court, in Basco, analyzed the plaintiffs' Motion for Class
Certification under both the first and second stage of the two-step analysis, we have
limited our discussion of that case to its analysis under the initial, less stringent
standard.

The burden on the Plaintiffs to establish that their case is "appropriate" for conditional certification and judicial notice "is not a difficult one." Severtson II, supra at 279.  However, before subjecting an employer to the burdens of a collective action, the plaintiffs must establish a colorable basis for their claim that a manageable class of "similarly situated" plaintiffs exist.  Severtson I, supra at 267.  Considering the individualized nature of the alleged violations, along with the absence of evidence to support the Plaintiffs' conclusory assertion of widespread violations, we find that the Plaintiffs have failed to demonstrate even a colorable basis that they were the victim of some common policy or plan, or that a manageable class exists, which would render a collective action appropriate.  Therefore, we recommend that the Plaintiff's Motion for Conditional Certification, Judicial Notice, and to Compel be denied at this time.[6]

---

[6]As noted, the Plaintiff's Motion to Compel seeks to require the Defendants to provide them with a list of all persons that were employed by the Defendants as shift managers at their Pizza Hut restaurants from September of 2002, until the present, and contact information for those individuals.  The purpose of the requested information is to facilitate notice to potential putative plaintiffs.  Since, we find that the Plaintiffs' claims are inappropriate for collective action, and notice, it necessarily follows that the information being sought is no longer pertinent to the Plaintiffs' claims.  Furthermore, given our recommended disposition of the Plaintiffs' Motion to  for Conditional Certification, Judicial Notice, and to Compel, we recommend that the Defendants' informal Motion to Stay consideration of that Motion be denied, as moot.

During the time that the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel, was under advisement, the Defendants filed a Motion to Strike certain portions of the Plaintiffs' Interrogatories Answers that were submitted in support of the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel. The Defendants' Motion was predicated on depositions of the Plaintiffs, which commenced after the Hearing on the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel, and which the Defendants contend contain testimony that is contradictory to the information that was conveyed in the Plaintiffs' Interrogatory Answers. Since we have concluded that the Plaintiffs' Interrogatory Answers, as they were presented, fail to provide a basis for conditional certification, we further recommend that the Defendants' Motion to Strike be denied, as moot.

NOW, THEREFORE, It is –

RECOMMENDED:

1.     That the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel [Docket No. 29] be denied.

2.     That the Defendants' informal Motion to Stay Consideration of the

Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel

[Docket No. 34] be denied, as moot.

3.     That the Defendants' Motion to Strike Interrogatory Answers [Docket

No. 57] be denied, as moot.

Dated:  June 12, 2006                    s/Raymond L. Erickson
                                         Raymond L. Erickson
                                         CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than June

29, 2006,** a writing which specifically identifies those portions of the Report to which

objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in

the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than June 29, 2006,** unless all interested parties

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.